JOHN A. STEWART v. A. H. JONES, CORA N. TILLERY, ED. R. TILLERY and MARY TILLERY, Appellants; and LEE MURRAY et al.

Division One, April 13, 1909.

1. **EQUITABLE PARTITION: To Terminate a Trust: Ultimate Aim.** Where the result aimed at by the suit and attained by the decree was a partition among the life tenant and the remaindermen mentioned in the will, the suit will be held to be one for equitable partition, and not one to terminate a power given to the executor to sell upon the death of the life tenant, and to terminate a trust vesting the title in one of the remaindermen for the benefit of the others, although the word "partition" is not used in the bill.

2. ————: **Governed by Statute and Will.** The statute declaring that "no partition or sale of lands devised by last will shall be made contrary to the intention of the testator expressed in any such will," applies to equitable partitions as well as to strictly legal partitions. Equity follows the law; and where the will gave the homestead to testator's wife in lieu of dower and directed that at her death the executor should sell the property and divide the proceeds *per capita* among testator's daughter

Stewart v. Jones.

and five nieces, and the widow accepted the will, and sold her life estate to plaintiff, who also bought the interests of the five nieces, and now seeks to have the estate partitioned, the wife and the nieces, and in consequence plaintiff, who is their vendee, took under the will, and the statute applies.

3. ————: **Interpretation of Wills.** The court will not make a will for testator. Its duty is to ascertain his intention, as gathered from all its words and its four corners, and to give effect to that intention; and in getting at his intention, the court as nearly as may be puts itself in his environment, stands in his shoes and looks with his perspective through his eyes.

4. ————: ————: **Intention: To Provide Home for Widow.** Testator had been twice married, and left a daughter by his first wife, and by his will left his homestead, consisting of 52 acres in the outskirts and now a part of a growing town, to his widow for life, in lieu of dower in all his other lands, and directed that at the death of his widow his executor should sell· the homestead at public vendue and, after paying expenses, divide the proceeds equally *per capita* between his daughter and the five children of a sister, and "in the event that my said daughter shall have died prior to the distribution of the proceeds of said sale, then her share shall descend to her bodily heirs, if any survive her, and if she shall have died without any bodily heirs surviving her, then her aforesaid share shall descend and be equally divided between the children" of another sister. The executor administered the estate, made final settlement and was discharged. The widow married again and sold her life estate to plaintiff, who also bought the five-sixths interests in remainder of the five nieces. The daughter married and has one child. *Held*, that the will did not spend its force on providing a home for life to the widow, and that purpose having been fulfilled the property should be partitioned; but its purpose also was to save to the daughter and nieces the property intact, without partition or sale, until the widow's death, and the daughter objecting to a commutation of the widow's life estate and a partition of the lands or a sale in pursuance thereof, the will must be obeyed, and no partition in the face of the daughter's opposition can be decreed during the widow's life.

5. ————: **Land Converted Into Money: Reconversion: Opposition of Devisees.** The right of the remaindermen to reconvert into real estate land directed by the will to be, converted into money, and thus avoid a sale under a will directing the land to be converted into money, where those who are to take under the will are definitely determined by its terms and all take part in the equitable conversion, is not the same as under a will which does not definitely determine by its terms who are to take under it and where some of them oppose the reconversion. [Distinguishing Williams v. Lobban, 206 Mo. 399.]

Appeal from Boone Circuit Court.—*Hon. A. H. Waller*, Judge.

REVERSED.

*D. D. Duggins* and *Webster Gordon* for appellants.

(1) The trial court should have sustained defendants' objections to the introduction of any evidence in the case. First: Because the petition shows upon its face that it is a proceeding in partition for the sale of said real estate, and also shows that by the will the land was devised to the wife for life and after her death the executor was directed to sell the same. R. S. 1899, sec. 4383. Second: Because the sale of the land as prayed for would be in violation of and contrary to the provisions of the will, and also contrary to the provisions of the statutes. R. S. 1899, sec. 4650. Third: Because the petition shows upon its face that, under the doctrine of equitable conversion, the land has been by the terms of the will converted into money and that plaintiff only has the assignment of the widow's life interest and the assignment of the future contingent interest of the other beneficiaries. The direction to sell is absolute; the place of sale is stated; the time of sale is also positive; the notice of sale is prescribed; the manner of sale is designated; the executor has no discretion whatever. McClure's Appeal, 72 Pa. St. 414; Hocker v. Gentry, 3 Met. (Ky.) 463; Compton v. McMahon, 19 Mo. App. 501; Gates v. Hunter, 13 Mo. 513; 2 Underhill on Wills, secs. 695, 696, 697, 698, 703; 2 Woerner, Administration, sec. 342; McPike v. McPike, 111 Mo. 227. (2) The court erred in overruling defendants' objections to the introduction of the evidence tending to show that the executor had made final settlement of the estate. The executor of the will could not, by

his action in making final settlement of the estate, prejudice the rights of defendants under the will, and the probate court could not defeat the will, or thwart the intention of the testator by any order it might make. It was the duty of that court to have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before it. R. S. 1899, sec. 4650. (3) Plaintiff's contention that the action of the probate court, in approving the final settlement of the executor and discharging him, nullified the will, is not well taken. It would be absolutely useless to make a will if it can be rendered inoperative by the conduct of the executor, or by order of the probate court. If the executor had died or resigned his executorship, before final settlement of the testator's estate, and before executing said trust, the succeeding executor would have been authorized to execute the said power of sale. In cases where the power of sale conferred by the will is positive and peremptory, and is one the administrator *cum testamento annexo* can execute, then the .mandate of the statute is that he shall do . so. In re Rickenbaugh Estate, 42 Mo. App. 340; Dilworth v. Rice, 48 Mo. 136; Evans v. Blackinston, 66 Mo. 439; Coil v. Pittman, 46 Mo. 51; Francisco v. Wingfield, 161 Mo. 542; Donaldson v. Allen, 182 Mo. 626; Hazel v. Hagan, 47 Mo. 281; Owen v. Switzer, 51 Mo. 328; 2 Woerner, Adm., 719. (4) There is no equity in the petition. Stripped of two paragraphs referred to in the statement, it is purely a proceeding for the partition, or the sale and division of the proceeds of the real estate under the will of the testator. Ex parte Cubbage v. Franklin, 62 Mo. 364; Lilly v. Menke, 126 Mo. 211; Stevens v. De La Vaulx, 166 Mo. 27. (5) The intention of the testator must control. It is the cardinal rule. The language of this will is so positive and emphatic that no doubt can exist as to the intention of the testator. This language shows that the tes-

tator's intention was to limit the rights of the bene-
ficiaries to take to the time of the distribution of the
proceeds of sale. Where the testator interprets and
construes the instrument, the courts, when called upon
to construe it, will follow the construction placed upon
it by the executor. Reinders v. Koppelman, 94 Mo.
343; Small v. Field, 102 Mo. 129. (6) Plaintiff al-
leges in the petition that the fee of the land was in
the defendant, Mrs. Tillery, the only child of the
testator; and that the same vested in her under the
residuary clause of the will, being item sixth thereof.
The will puts the fee in the executor, who is the de-
fendant, A. H. Jones; if not directly and in positive
terms, then it does so by force of strong implication;
for the will directs that the executor shall sell the
real estate and distribute the proceeds of sale, and
then goes further and limits the rights of the defend-
ants in the proceeds of sale to take effect at the time
of distribution. A court of equity will not compel a
trustee to execute a trust against the wishes of the
cestui que trust. 2 Underhill on Wills, sec. 719.

*E. W. Hinton* for respondent.

(1) The absolute direction to the executor to sell
the land and divide the proceeds *per capita,* etc.,
created a vested equitable right in the ultimate bene-
ficiaries to have the land so applied, but since the
will did not otherwise dispose of the legal title in
remainder, it passed to and vested in the defendant
Mrs. Tillery as sole heir and residuary devisee, sub-
ject to the trust thus created. Eneberg v. Carter, 98
Mo. 647; Williams v. Lobban, 206 Mo. 410; Greenough
v. Wells, 10 Cush. (Mass.) 571; Gwilliams v. Rowell,
1 Hardress 204; 2 Sugden on Powers (3 Ed.), *p.
159. First. It is clear beyond all dispute that the
will contained no express devise of the legal title
in remainder to the executor. And it would seem

equally clear that there is no devise to him by im-
plication. This court has defined an implication which
will give an estate to the executor as: "Such a strong
probability that an intention to the contrary cannot
be supposed." Eneberg v. Carter, 98 Mo. 647. That
is, in order that the executor may take title to land
by implication, and thus disinherit the heir, it must
be manifest from the nature of the duties to be per-
formed that the testator necessarily must have in-
tended to place the title in the executor to enable him
to properly execute the trust. But here an express
imperative power of sale was given which could be
exercised quite as well by the executor without title
to the land as with it, and hence there is no reason
or occasion to suppose that the testator intended an
unnecessary thing. Greenough v. Wells, 10 Cush. 577.
The only language in the will which can possibly be
construed as embracing the legal title in remainder
to the land in question is contained in the residuary
clause, which gives all of the residue of the estate,
both realty and personalty to the heir, Mrs. Tillery.
Hence, this legal title must have passed to her, either
by descent, or by devise under the residuary clause.
This result cannot be in the least affected by any
doctrine of equitable conversion. That principle ap-
plies solely to the devolution of equitable rights, not
of legal titles. Second. It is also clear that the legal
title in remainder, having once vested in Mrs. Tillery,
will so remain until legally transferred by her, or
until divested by a valid exercise of the power of sale
under the will. Eneberg v. Carter, supra. There-
fore, at law, the rights of the parties would depend
upon, and have to be worked out through, a sale under
the power. It is upon this principle that the lapse or
non-exercise of a mere power leaves an indefeasible
title in the heir. But in equity a power may be in
trust, and thus create equitable rights. A mere power
imposes no duty on the donee to exercise it, and there-

fore no right on the part of any person until it is actually exercised. But a mandatory power for the benefit of designated persons does create a duty and a corresponding right in equity. Williams v. Lobban, 206 Mo. 415; Greenough v. Wells, 10 Cush. 571. (2) (a) The power of sale in this case was given to the executor as such, and was to be exercised in any event at the time and upon the terms designated by the testator. The power was therefore given to the executor in his official, instead of his personal capacity and must be exercised by him, if at all, prior to his final discharge by the probate court. Little v. Addington, 59 Mo. 275; Francisco v. Wingfield, 161 Mo. 542; Donaldson v. Allen, 182 Mo. 626; Brown v. Woody, 22 Mo. App. 259. But even if the power conferred upon the executor had survived his discharge, that would not preclude a court of equity from terminating the trust. Donaldson v. Allen, 182 Mo. 626. (b) A court of equity has jurisdiction to enforce the trust notwithstanding the fact that under Sec. 137, R. S. 1899, the power of sale might be exercised by an administrator *de bonis non cum testamento annexo,* because a court of equity cannot be ousted of its ancient jurisdiction over trusts by a mere statutory remedy, not in terms exclusive. Harrington v. Utterback, 57 Mo. 519; Hamer v. Cook, 118 Mo. 476; Baldwin v. Dalton, 168 Mo. 20; Coil v. Pittman, 46 Mo. 51. (3) This is a suit in equity for the establishment and winding up of a trust, and not a statutory action for partition, because the rights asserted by plaintiff are purely equitable, namely, to have the legal title in remainder, held by Mrs. Tillery as sole heir and residuary devisee, charged with the trust in favor of the ultimate beneficiaries, and enforce this beneficial right to the proceeds of sale. Goodwin v. Goodwin, 69 Mo. 617; Reed v. Robertson, 45 Mo. 580; James v. Groff, 157 Mo. 402; McCabe v. Hunter, 7 Mo. 355. (4) The termination of the trust and sale of the

Stewart v. Jones.

trust property prior to the death of the widow is not in contravention of the will, because the testator neither expressly nor impliedly imposed any restraints against alienation by any of the parties beneficially interested. Sikemeir v. Galvin, 124 Mo. 367; McQueen v. Lilly, 131 Mo. 9.  (5) Plaintiff, as one of the parties in interest, was entitled to have an unproductive trust terminated, both on general equity principles, because there was nothing prohibiting it and no purpose to be accomplished by its continual existence, and on the ground of his equitable right to take the shares of his grantors in land, and have equitable partition. Donaldson v. Allen, 182 Mo. 626.  1st.  If no purpose of the testator will be promoted by delaying the actual conversion of the property and no prejudice result from an immediate sale, the parties interested or any of them have the right to have the property or its proceeds made immediately available for use and enjoyment, for that is one of the incidents of unfettered ownership, whether the thing owned is a legal estate or an equitable right.  2d.  The above considerations are amply sufficient alone to support the decree, but in addition thereto the plaintiff had the right of election to take the share of his grantors in land and have equitable partition.  Mandlebaum v. McDonald, 29 Mich. 76; Reed v. Underhill, 12 Barb. (N. Y.) 113; Seely v. Jago, 1 Pere Williams 389; Pomeroy's Equity, sec. 1176.  (6)  (a)  The will contains no express prohibition against a judicial sale prior to the death of the widow.  That is, it clearly does not say in terms that there shall be no such sale, or that the property shall be kept intact until that time.  (b)  The direction to sell at the death of the widow and divide the proceeds does not operate as an implied restriction against a sale prior to that time, if the life tenant consents.  Anonymous, 2 Leonard (K. B., 16 Eliz.) 220; Gast v. Porter, 13 Pa. St. 533; Hamlin v. Thomas, 126 Pa. St. 20.  (c)  By the

analogy of the equitable partition cases, an immediate sale of the property is not in contravention of the will, because it imposes no restraints against voluntary or involuntary alienation of the interests of any of the parties. Sikemeier v. Galvin, 124 Mo. 367; McQueen v. Lilly, 131 Mo. 9. (7) There was no abuse of discretion by the trial court in ordering this property sold and the proceeds distributed, because the purposes of the testator had been accomplished, and it is the policy of our law to make all property freely alienable and available, and to give to each owner, whether of a legal estate or of an equitable interest, the use and enjoyment of his own wherever it is possible without prejudice to others. Donaldson v. Allen, 182 Mo. 626; Sikemeier v. Galvin, 124 Mo. 367.

LAMM, P. J.—From a decree, executing and terminating an alleged trust under a will determining the interests of certain parties in the *corpus* of the alleged trust estate (consisting of a homestead tract), finding that the land could not be divided and allotted in kind equitably, and decreeing a sale by a special commissioner and a division of the proceeds, certain defendants appeal.

There is little or no dispute on the facts. Questions made here arise on the law applicable to those facts.

Attending to the case made, it is this:

In 1891 Patrick Henry Jones died testate, a resident of Boone county, seized of a considerable estate in lands and chattels, leaving a widow (a second wife) and one daughter (Cora N.) by a former marriage, surviving him. Cora intermarried with the codefendant, Ed. R. Tillery, and one child was born of this marriage after Patrick's death, to-wit, the defendant Mary, now an infant. The will of Patrick nominated his brother, Aquilla H. Jones, as executor, who qualified and took on himself the burden of administra-

tion. He is impleaded as a defendant under the name of A. H. Jones. Patrick left surviving him certain nieces and nephews, the children of two married sisters, Mrs. Carson and Mrs. Murray. As presently seen, the Murray children have a contingent, the Carson children had a vested, interest in Patrick's homestead. The Murrays are made defendants, but we cannot make out that they answered or took any part in the trial, nor do they prosecute an appeal.

Patrick's will was probated in common form in 1891 in the probate court of Boone county. No contest of it was ever made. After providing, in item 1, that he desired to be buried by the side of his first wife and children at Mount Zion Church in Boone county, item 2 reads:

"I devise to my beloved wife, Eliza K. Jones, the homestead upon which I now live consisting of 52 60-100 acres, and being situated immediately west of the corporate limits of the town of Columbia, Missouri, to have and to hold the same during her natural life. This devise is in lieu of and in absolute bar and discharge of her right of dower in all my real estate."

After providing in item 3 that $2,000 be paid Eliza by his executor and that said sum and certain specific chattels are bequeathed to her in absolute bar and discharge of her dower in his personal property, item 4 reads:

"I direct that at the death of my said widow, Eliza K. Jones, my executor shall sell the aforesaid homestead at public vendue, at the courthouse door in the said town of Columbia, after giving such notice of said sale as the law requires in sales of real estate under deeds of trust with power of sale, and after paying the expenses of sale, the proceeds thereof shall be divided equally *per capita* between my daughter, Mrs. Cora N. Tillery and the children of my sister, Mrs. Louisa Carson. In the event that my said

daughter shall have died prior to the distribution of the proceeds of said sale, then her share therein shall descend to her bodily heirs, if any survive her, and if she shall have died without bodily heirs surviving her, then her aforesaid share shall descend and be equally divided between the children of my sister, Mrs. Elizabeth Murray.''

After bequeathing to the trustees of the Methodist Episcopal Church, South, at Columbia $1,000 in trust for the benefit of superannuated ministers and their widows and orphans, within the jurisdiction of the conference to which the Columbia church belonged at the time, and directing it to be loaned and the income used (under certain safeguards) as indicated, item 6 reads:

''I devise and bequeath to my beloved daughter, Mrs. Cora N. Tillery, all the residue of my estate, real, personal and mixed, to have and to hold the same absolutely in fee simple.''

The widow elected to take under the will, and, in 1899, the executor having made final settlement of his accounts, distribution and his discharge were ordered by the probate court.

Patrick's widow continued to reside on the homestead until, finally, contracting a second marriage with D. R. Vivion, she moved away and for several years the premises were rented out at an annual rental of $400.

On March 13, 1905, Mrs. Vivion quitclaimed her interest in the homestead to the plaintiff, Stewart, in consideration of $5 and ''other considerations''— the ''other considerations'' being his agreement to pay her an annuity of $360. A few days before her deed, Stewart, who is a real estate dealer, acquired the interests of the Carson children under item 4 of the will. Their deed by apt narrations refers to the will and recites that grantors sell their interests in the homestead, describing it, to Stewart for $5,000 paid

them by him. It not only grants, bargains and sells their right, title and interest to the described homestead, but has this clause:

"And for said consideration we do further assign, transfer and set over unto the said John A. Stewart all our interest in and to the proceeds of said real estate, in the event of a sale thereof by the executor or under the provisions of said will and do authorize and empower him to have, demand, collect and receive and receipt for all the proceeds of said real estate in the event of such sale, that may be due us or either of us, so that said John A. Stewart shall by these presents be invested with any title that we may have to said real estate and be substituted to all our right, title and interest in the proceeds of the sale of the said real estate in the event the same shall be sold under the terms of said will."

It stands conceded that there are five of the Carson children. Under the *per capita* clause in the will these children would share in the proceeds with Cora in the proportion of 'five to one.

Stewart put the Vivion deed on record on May 31, 1905, and the Carson deed shortly before. We infer these several deeds were part and parcel of the same transaction. He owns land adjacent to the homestead and is exploiting his holdings on the markets as residence property, laid out in lots and blocks, streets and alleys, and is selling to purchasers.

At the death of Patrick, his homestead was worth from eight to nine or ten thousand dollars. At the time of the trial, the residence parts of Columbia having shoved on west, the homestead is now partly in the city limits and is about to be taken in wholly, and has increased in value to twenty thousand dollars or upward. Some real estate experts gave it as their opinion at the trial that certain favored parts of it

were worth so much as $1,000 per acre, and that certain other parts were depreciated by a ravine and the proximity of a cemetery. These gentlemen also hazarded an opinion that the land was not susceptible of division in kind without serious detriment to the parties in interest, and that the present real estate market at Columbia bid fair to result in a good sale if the tract was put on the block at public vendue.

Going back a little before her sale to Stewart, Mrs. Vivion commenced a suit in the Boone Circuit Court against the executor of Patrick's will and the Tillerys, the Murrays, and the Carson children—her petition in two counts. By the first she pleads the terms of Patrick's will, that she had accepted it, and had intermarried with Vivion. Her petition then puts her counsel's construction on the meaning of the will, viz.: that testator intended thereby to give her a life estate in the homestead and to devise the remainder over in two parts, one to the Carson children and the other to his daughter, Cora, or (in case of her death) to her daughter, Mary, or (in case of Mary's death) to the Murray children; that there was no child born to Cora at testator's death but that Mary was born since; that there was doubt in defendants' minds, and in would-be purchasers, as to whether the intent of the will was as alleged by plaintiff, and as to whether the real estate could be sold; wherefore, plaintiff prayed that the will be construed and that the meaning and legal effect of it be decreed to be as alleged by her.

A second count alleges that plaintiff holds a life estate in the homestead and that defendants own the remainder over in that tract as tenants in common; that the land cannot be partitioned in kind and a partition and sale is prayed.

To the first count, a demurrer was interposed on the grounds that plaintiff had no legal capacity to sue, that the petition did not state facts sufficient

to constitute a cause of action. The second count for partition was demurred to on the ground that it appeared that partition is contrary to the intention of the testator as evidenced by his will.

Presently, the demurrer was sustained and leave was granted to amend. Presently, on the 17th of January, 1905, in vacation, the cause was dismissed by plaintiff and the costs paid.

Such was the end of the first suit.

On the fifth day of May following, Mr. Stewart, having acquired the interests of the widow Vivion and the Carson children, commenced a new suit in partition against the same parties, omitting the Carsons. His petition pleaded the terms of the will *in haec verba,* but through his learned counsel, Mr. Hinton, he put his own construction on that will and pleaded its intendment as got at by that construction, *viz.*: After conventional averments, it is alleged that the homestead was devised to Patrick's widow for her natural life, with remainder over in shares *per capita* to his daughter, Cora, and the Carson children; that, at the death of the widow, the will provides that the executor should sell the land and divide the proceeds, *per capita,* between Cora and the Carson children, but that if Cora die prior to the distribution, then her share descended to the heirs of her body surviving her, and, in default of surviving heirs, then to the Murray children. After other conventional allegations, the petition avers that the five Carsons took an undivided interest of one-sixth each as tenants in common in remainder, and that Cora was tenant in common in remainder owning an undivided one-sixth interest for her life with remainder over to the heirs of her body and, in default of such heirs surviving, then to the Murray children. Alleging that plaintiff had acquired the interests of the widow and the Carson children by conveyance, the pleader next averred that plaintiff owned the life es-

tate of the widow and an estate in fee simple in and to the undivided five-sixths of the homestead and that Cora owned an undivided one-sixth in remainder, subject to the conditions aforesaid; that partition in kind could not be made without great prejudice to the interest of all parties, wherefore partition was prayed with a sale and a division of the proceeds, after paying costs and expenses.

Such proceedings were had in the second suit that issue was joined by answers setting up the terms of the will as an insuperable obstacle in the road to partition. Thereupon plaintiff, on June 15, 1905, filed his amended petition, averring, among other things, that the Carson heirs "became the owners at law and in equity of an undivided one-sixth each of said tract of land as tenants in common in remainder," subject to the widow's life estate; that the defendant, Cora, by the will "took and became the owner in law and in equity of an undivided one-sixth of said tract of land as tenant in common in remainder, though whether for her life only with contingent remainder to the heirs of her body, or in fee upon condition, the plaintiff is not advised." The prayer of the amended petition was that the court determine the respective interests of the parties and make partition and that the one-sixth interest of Cora in remainder be assigned and set off to her subject to the life estate of the widow, now held by plaintiff, and if that could not be done without prejudice, that the land be sold, etc., and "for such other, further, greater or different relief as the court may see proper and to equity and good sense may belong."

To that petition, defendants answered by refiling their former answers. Thereupon the cause was taken up, evidence heard and it was submitted, the court taking time to consider. Thereafter, in August, 1905, the submission was set aside and plaintiff dismissed his action.

Such was the end of the second suit.

Thereafter, a third, the present, suit was brought by plaintiff against the Tillerys, Jones and the Murrays. The petition sets forth that Patrick died seized of the homestead tract, describing it, leaving a will; that his sole and only heir at law was Cora; that he left a widow who married Vivion; that he had five nieces, to-wit, the Carson children, naming them; that by his will duly probated, the defendant A. H. Jones was appointed executor, who qualified, made final settlement and has been discharged, but nevertheless continued to claim some right, interest or power, as such executor in respect to the land, hence, he is made a party defendant; that for the purpose of providing a home for the widow after his death, said Patrick, by his will, devised the homestead to her for life in lieu of dower; that she accepted the will. Its provisions relating to the sale of the homestead on the death of the widow and the division of the proceeds are next set forth, with the averments that by the residuary clause testator devised and bequeathed the rest and residue of his estate, both real and personal, to Cora "but did not otherwise devise or dispose of the legal title in remainder" to the homestead tract. That the power of sale given by the will for the benefit of Cora and the Carson children to the executor was given to him as such, strictly in his capacity as executor only, and that, since his discharge by the probate court, he is without further power or authority to make the sale as by will directed; that the homestead tract lies hard by the city of Columbia on the west and is chiefly valuable for residence property, is susceptible of division in kind into a large number of building lots without any prejudice to the rights of any parties beneficially interested; that plaintiff has acquired the life estate of the widow by deed of conveyance and has entered into possession; that by another conveyance, he has acquired the interests of the

Carson children in the land, and, by assignment from them, has become entitled to their respective rights under said will to the proceeds of the sale of said land; that as grantee and assignee of the aforesaid beneficiaries, he has elected and desires to receive and take in land the aforesaid interests given by the will to the Carson children so far as they can be lawfully set off to him; that the infant Mary has some interest in Cora's share of the land and in the proceeds; that the Murray children have some contingent interest in Cora's share and in the proceeds of the sale thereof; that Cora objects to any division or sale of said tract of land and refuses to recognize plaintiff's rights therein. The prayer of the petition follows:

"Wherefore the plaintiff prays the court by its proper decree to declare that the defendant, Cora N. Tillery, holds the legal title in remainder to said tract of land as heir at law and residuary devisee of the said Patrick H. Jones, deceased, in trust for the benefit of this plaintiff, and for the legal benefit of herself the defendant, Mary Tillery, and the defendants, Lee, Erl and Henry Murray, and that the beneficial interest of plaintiff is five-sixths thereof, and that the defendant, Cora N. Tillery, be ordered to convey to the plaintiff an undivided five-sixths of said land subject to said life estate, and that the same be set off to plaintiff in severalty if the same can be done without prejudice to the rights of the defendants, and if such division cannot be made, then the court order a sale of said land in fee and that the life estate of said Eliza K. Vivion, now held by plaintiff, be commuted into money and paid over to him and that the balance of the proceeds of sale be divided between plaintiff and defendants according to their respective interests, and that if necessary a suitable trustee be appointed for the purposes of such sale, and the plaintiff prays for such other, further, different or greater

relief as the nature of the case may require and to equity and good conscience may belong.''

To that petition, Jones, executor, answered, admitting some and denying other allegations, averring that he has fully administered testator's estate "except the sale of the aforesaid lands and the distribution of the net proceeds thereof in accordance with the provisions" of Patrick's last will and testament; that Patrick's widow is still alive and for that reason the sale and distribution cannot be had now.

The Tillerys, husband and wife, answered admitting the will, its probate, that Patrick was seized in fee of the homestead tract, and that Mary is their only child. They deny all other averments.

Further answering, they plead specifically the provisions of the will; that their codefendant, Jones, qualified as executor; that Patrick's widow accepted the will; that the homestead tract, by the terms of the will, was to be sold on the death of the widow on the terms mentioned in the will and the proceeds divided by the executor as therein set forth; "that by reason of said will, and by reason of the limitations, conditions and directions of the said testator therein, partition of said real estate cannot be made, and that no sale of said land can be made during" the widow's life; and that said widow is still alive; wherefore, they pray that suit abate.

For further answer, they plead the two former suits for partition and sale of the homestead tract. They allege that in the first suit brought by the widow, the present plaintiff had full knowledge and was aiding, advising and counseling the widow in said suit; that the widow, knowing that the real estate could not be partitioned under the provisions of the will, brought her suit for the purpose of vexing and harassing defendants and of putting them to costs and the expense of hiring attorneys and attending a trial in the circuit court of Boone county (they, the defend-

ants, residing in Saline county). They aver that having bought the interest of the widow after a demurrer to her petition was sustained and she had dismissed it, the plaintiff straightway instituted a second suit in partition for the purpose of further vexing and harassing them; and afterwards did voluntarily dismiss the same; that the present suit followed hard on the heels of the second and is the third for partition; that all said suits, including this, were vexatious and set on foot willfully to harass, annoy and cause trouble to defendants; that they have no adequate remedy at law to prevent such injury, wherefore, they pray an order restraining plaintiff and all claiming through or under him from prosecuting this suit or similar suits for the partition of said land and for all proper relief.

The minor, Mary, answered through her guardian *ad litem,* putting plaintiff on his strict proof.

The reply was a general denial of the affirmative averments in the Tillerys' answer.

The facts established at the trial are sufficiently indicated in the foregoing statement. There was no evidence tending to show that plaintiff aided and counseled the widow in her suit for partition and to construe the will, or that he caused such suit to be instituted, or at that time had any present or prospective interest in the subject-matter of the litigation, or that he sued groundlessly for the very purpose of harassing defendants and putting them to trouble and outlay.

The decree finds the facts, *seriatim,* as alleged in the petition to be true, and (*inter alia*) that the legal title in remainder in the homestead tract, descended to and vested in Cora as the sole heir at law of Patrick in trust for the beneficiaries of said power of sale donated to Jones, executor, in the proportion of an undivided five-sixths thereof each for the benefit of the Carson children, naming them, and the remain-

ing one-sixth for her own benefit and contingently for the benefit of the heirs of her body and the Murray children, naming them; that the plaintiff, Stewart, owns the life estate of the widow; that the Carson children have conveyed their interests in the real estate to him and assigned to him their interests in the proceeds of the sale of the land.

The decree closes as follows:

"And the court doth further find that the power of sale conferred by the will of Patrick H. Jones upon the executor thereof has lapsed by reason of his final settlement and discharge as such executor by the probate court as aforesaid. And that the plaintiff, Stewart, is entitled to have the trust in said tract of land executed and terminated, and to have vested in him the legal title in remainder to an undivided five-sixths of said tract of land.

"And the court doth further find that said tract of land, by reason of the location, nature and condition thereof, cannot be divided and allotted in kind to the plaintiff and the defendants without great loss and prejudice to their respective rights and interests, and that said tract of land ought not to be sold subject to the life estate aforesaid of the said Eliza K. Jones, now held by the plaintiff, Stewart, and that the said Eliza K. Jones is now sixty-one years of age.

"Wherefore, to the end that the trust in said tract of land may be terminated and executed, it is therefore ordered and decreed by the court as follows:

"1st. That the legal title in remainder to an undivided five-sixths of said above described tract of land be divested out of the defendant Cora N. Tillery and vested in the plaintiff, John A. Stewart.

"2d. That said above described tract of land be sold for the purposes set forth in this decree in the same manner and upon the same notice as in case of sales of real estate under execution.

"3d. That upon the approval of such sale, after the payment of all costs in this cause, five-sixths of the proceeds of sale be paid to the plaintiff, John A. Stewart, and that the life estate of the said Eliza K. Jones held by the said Stewart in the remaining sixth be commuted to its present value and paid over to the plaintiff, and the balance thereof be paid to the defendant, Cora N. Tillery, and in the event of her death prior to such time, then to the heirs of her body now surviving her, and in default of heirs of the body her surviving, then to the defendants, Lee Murray, Erl Murray, and Henry Murray.

"4th. For the purpose of carrying out the provision of this decree it is ordered that Fountain Rothwell be and he is hereby appointed the special commissioner of this court, and that before entering upon the discharge of his duties he enter into a bond in the sum of $20,000, with sufficient sureties to be approved by the clerk of this court, conditioned for the faithful discharge of his duties hereunder, and that he report all his proceedings hereunder to the court for approval."

From that decree, after unsuccessful motions for a new trial and in arrest were filed in due time, this appeal, as said, is prosecuted.

We had a purpose in elaborating the allegations of the petitions and answers in the series of suits, having a common purpose, culminating in the one at bar. It was to show a gradual growth and evolution in, or shifting of position on, the rights of parties litigant and of the legal principles determinative of those rights. The briefs of learned counsel for respondent in luminous order, with pith and strength, discuss with ripe scholarship a bundle of abstruse and subtle questions on real estate law, arising at law and in equity. We are beholden to counsel for profit from his research, but such, and only such of those questions as we deem vital on appeal, will be considered.

I.   At the very door of the case lies the question,
looming large, whether this is an equitable partition
suit (as argued by appellant), or a suit in equity pure
and simple to execute and determine a trust and to
put the beneficiaries in possession of their respective
interests in the *corpus* of the trust estate (as argued
by respondent).   Attending to it, it will be observed
that the word "partition," used in the first suits, is
sedulously avoided in this.   But the results aimed
at by the former suits were aimed at in the present,
and (what is more) attained by the decree.   To use
a huntsman's homely simile, the tracks in all the suits
led to the same hole, and that hole a partition.   We
need bother ourselves but little with the mere words
used for they go but skin deep.   The value of words
is to get at the thought.   The heart of the thing sought
was partition.   The thing got was partition.   If a
hungry child wants bread and butter from its mother
and gets it, is the form of the request, whether sign,
cry or some veiled verbal formula, material?

One of the chief cases relied on by plaintiff for
the termination and execution of a non-productive
trust (Donaldson v. Allen, 182 Mo. 626), was a suit
to determine a trust, as here, and having partition
as its goal.   [See, also, Donaldson v. Allen, 213 Mo.
293.]

In the latter case it was held that equitable fea-
tures are every-day incidents of partition suits, for
example (among others), "divesting title, decreeing
a trust or establishing title as a step incident to parti-
tion.   [Garesche v. Levering Inv. Co., 146 Mo. 436;
Donaldson v. Allen, 182 Mo. *supra;* Budde v. Rebenack,
137 Mo. 179; Rozier v. Griffith, 31 Mo. 171; Dameron
v. Jameson, 71 Mo. 97; Holloway v. Holloway, 97
Mo. 628; Padgett v. Smith, 206 Mo. l. c. 314.]"

To hold that a suit actually resulting in partition
is not a partition suit is to coyly toy with shadow and
pass by substance.   We hold that, for the application

of the law to the facts, the case must be deemed, to all intents ·and purposes, a proceeding for equitable partition.

II.    The next question in logical order is, whether the following statute controls in equitable partition, *viz.*:  "No partition or· sale of lands, tenements or hereditaments, devised by any last will, shall be made under the provisions of this article, contrary to the intention of the testator, expressed in any· such will." [R. S. 1899, sec. 4383.]

There is a cognate section in the chapter on wills, *in pari materia,* which must be construed with the one just quoted, reading:  "All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them."    [R. S. 1899, sec. 4650.]

While equity, in a general way, is compassed by the venerable definition of Aristotle, *viz.*:  "A correction of the law, where by reason· of its universality it is deficient" (Fonblanque Eq. [Laussat's Ed.], p. 10), yet there is between law and equity such comity that, on the one hand, the law is frequently enlarged and enriched by borrowing equitable principles and, on the other, the maxim, equity follows the law, has play in arriving at just ends in the administration of justice.

Speaking to that maxim, Judge Story says (1 Story, Eq. Juris. [13 Ed.], sec. 64):  "It may mean that equity adopts and follows the rules of law in all cases to which those rules may in terms be applicable; or it may mean that equity, in dealing with cases of an equitable nature, adopts and follows the analogies furnished by the rules of law."

In Donaldson v. Allen, 213 Mo. 293, we held in judgment the question whether attorney's fees might be allowed to a successful plaintiff and taxed as costs

in an equitable partition.    It was contended, in that case, that such fees could be allowed, under the strict letter of the statute on partition, only in partition suits brought under the statute and not in equitable partitions.    The statute (sec. 4422) limits the allowance of reasonable attorney's fees to those attorneys bringing a suit "under this article" precisely as it is suggested here that section 4383, *supra,* is limited by its letter to partitions and sales of lands "under the provisions of this article."    In holding that such fees could be taxed as costs, we laid stress on the maxim that equity follows the law and pointed out that it was the doctrine of this court that, in equitable partition, the court will proceed according to the statute. [Spitts v. Wells, 18 Mo. 468; Holloway v. Holloway, 97 Mo. l. c. 639.]

In Stevens v. De La Vaulx, 166 Mo. l. c. 26-27, in speaking of section 4383, *supra,* and its application to equitable partitions, after pointing out the object of testator in that case, our Brother VALLIANT said:

"He [testator] preferred his own judgment in that matter to theirs [*i. e.,* the devisees']. . . . . The property was his, and he had a right to do with it as he pleased, and those who take of his bounty must take it on the terms he imposes.

"To make partition of his property now, however advantageous from a business point it might be to all concerned, would be to do violence to the intention of the testator expressed in his will, and to disregard the mandate of the statute above quoted.    That we cannot do.    [*Ex parte* Cubbage v. Franklin, 62 Mo. 364; Sikemeier v. Galvin, 124 Mo. 367; Lilly v. Menke, 126 Mo. 211; McQueen v. Lilly, 131 Mo. 17.]

"The learned counsel argue for appellant that this is not a statutory procedure for partition to which the statute above quoted applies, but it is an invocation of the broad powers of a court of equity to relieve the parties against an unfortunate condition

not foreseen by their testator, which results in impairment of the rights of all. So far as we can see from the record the plaintiff is the only party in interest who is dissatisfied with the terms of the will or who is asking that they be disregarded. Broad as the jurisdiction of a court of equity is, it is nevertheless within the limits of the statute law of the State, and the chancellor is as much bound to obey that law as is the judge in a law court. But a court of equity, exercising its ancient jurisdiction uninfluenced by the statute above quoted, would not make partition at the suit of a devisee in express violation of the will. A court of equity would no more at the suit of a devisee require a trustee, in violation of the will, to incumber or sell a part of the trust property merely to render the rest more profitable, than it would at the suit of a prospective heir require a man to improve his own estate or protect it from decay.''

That the statute in hand applies to equitable partition is suggested in Evans v. Blackiston, 66 Mo. l. c. 439, *et seq.*

That equity follows the law is illustrated by the proposition that equity courts will follow and enforce the Statute of Limitations. [Burrus v. Cook, 117 Mo. App. l. c. 403.] We refer to the dissenting opinion of ELLISON, J., in that case since it was held a correct pronouncement of the law when the case came here on his dissent; see, Burrus v. Cook, 215 Mo. l. c. 506.

The very rights asserted by plaintiff arise alone under the will of Patrick Henry Jones—*i. e.,* no will, no rights in him. The Carson children were not heirs at law of Patrick, they took under the will. The widow took under the will, not otherwise. Plaintiff stands in their shoes, *ergo,* plaintiff takes under the will or not at all. He must take, therefore, *cum onere,* the bitter with the sweet in its provisions and he cannot, by going into equity, hold any rights in the homestead free from the valid limitations and restrictions

of that instrument.   It follows him into a court of
conscience like the skeleton in Holbein's Dance of
Death and confronts him at every step.

It follows that sections 4383 and 4650, *supra,* must
be held to apply to the subject-matter of this litiga-
tion, and we so hold.   Any other view would trample
down the plain law.

III.  It is hornbook doctrine that the intention of
the testator, not from one word, but from all the words,
not from one corner, but from the four corners of the
will, is the touchstone of judicial interpretation of a
will.   That, also, is the statutory rule.   [Sec. 4650,
*supra.*]   In getting at testator's intention and giving
effect to his intendment, a court, called upon to in-
terpret his will, puts itself as nearly as may be in his
environment, stands in his shoes and looks with his
perspective through his eyes.

With which generalization, we come to the next
question in logical order, *viz.*:   What was the object
and intention of testator as evidenced by his will?

It is alleged in the petition and argued by counsel
for respondent at our bar that the sole object of tes-
tator was to provide a  home for his widow, Eliza.
That his only purpose in postponing a sale of the home-
stead was to provide such home for her.   The conclu-
sion drawn is that as such object has been subserved,
after the widow has parted with her home, equity will
not concern itself to maintain the *status quo,* but will
sell the land in advance of the period named in the
will and divide the proceeds.   [Hemlin v. Thomas,
126 Pa. St. 20.]

But learned counsel, through inadvertence, argues
unsoundly, we think, by assuming a premise not true.
Patrick Henry's will does not say that his only object
was to preserve a home for his widow.   That may well
have been one of his objects, but not the only one.
He knew his widow, in the course of nature, would be
likely to survive him a term of years.   He owned a

valuable homestead on the edge of an ambitious and growing town, long of slow or no growth, but on the verge of rapid expansion. Who shall say he did not anticipate the growth of that town and the rise in the value of suburban property presently, just as has happened? We find such an object commented upon in the case of Loomis v. McClintock, 10 Watts 274, and by GIBSON, C. J., in Styer v. Freas, 15 Pa. St. 339. With that in view he makes it contrary to his will to partition his homestead among those participating in his bounty until the happening of a certain event, to-wit, Eliza's death. When that time arrives, his daughter, Cora, takes, or (if she be dead) her own daughter, Mary, takes, and if both be dead then the Murray children take her *per capita* share. When that time arrived, if there were no Carson children alive and no one to inherit through them, there would have to be a different alignment of takers. Shall we say that this testator did not mean that this property should be held intact in anticipation of increasing value until the event of Eliza's death, when the definite takers would be settled and determined by the will? Or shall we say that equity will seize the situation as of the year 1905 and divide the proceeds among those *then* alive? If we say the latter, and, if when Eliza dies the property would then have passed to different takers, had the will been obeyed, have we not flown in the face of the intent of the testator and made it impossible to perform the will? It seems to us plainly so.

It is argued that Cora holds the naked legal title in the homestead, subject to the life estate, under the residuary clause of the will in trust, awaiting the execution of the power donated by the will, that the trust has become unprofitable and equity should end it as was done in Donaldson v. Allen, *supra*. Let us see about that. It seems to be profitable to Mrs. Tillery and those interested with her. The land is rising on the market, the plaintiff, as life tenant, voluntarily as-

sumed the burden of repairs and taxes. In this condition of things, it may be profitable to him to at once bring this situation to an end and to have commutation of the life estate in a large lump sum, which he may put in his pocket, and to have five-sixths of the remainder given to him as assignee of the Carson children, but this situation he brought on himself, he went into it with eyes wide open, in "a hazard of new fortune," and it creates no condition appealing persuasively to a chancellor. Clearly he is not entitled to a sale and division if the widow, Eliza, and the Carson children were not entitled to one, and, if we should hold that they were so entitled prior to the time appointed by the will, we would be making a new will for Patrick Henry Jones. He seems to have been quite capable of making his own, and we will give effect to it.

IV. What we have said disposes of the case. Questions relating to equitable conversion and equitable reconversion seem to us afield. The right to elect to reconvert into real estate under certain conditions and thus avoid a sale under the power in a will treating real estate as converted into money, discussed in Williams v. Lobban, 206 Mo. 399, is not controlling in this case. In the Williams case those who were to take under the will were definitely determined by its terms. Without awaiting the execution of the power of sale, all the beneficiaries but one sold. His interest passed by execution sale under the ruling in Eneberg v. Carter, 98 Mo. 647. It was held, in effect, that though the estate by the terms of the will was subject to the doctrine of equitable conversion, yet that all the beneficiaries had elected to reconvert it into real estate by their several sales and deeds made; and that a grantee, holding under mesne conveyances, held the land freed from the power to sell

donated to the executor by the will. It is manifest that the Williams case is not this case.

As we read the Mandlebaum case [29 Mich. 78], somewhat relied upon by plaintiff, that is not this case. That case was on all-fours with the Williams case, and, in discussing the principles of law underlying the judgment rendered, CHRISTIANCY, J., pointed out that the question did not involve a will limiting the property over to another. On page 89, he said: "The estate devised is not a conditional one to be forfeited or to revert to the heirs of the testator, or to go over to others on a breach of the restrictions, nor one which is to vest at some future day, or upon the happening of some future event, but an absolute vested remainder or estate in fee, and though not to come into actual enjoyment until the death of the widow, to whom a life estate is given, it is just as much vested and the devisees have just as much right to sell the interest or estate devised as if there had been no intervening estate for life. And the question of validity of the restriction is, in my view, precisely the same in all its legal aspects as if no life estate had been given to the widow, but the whole had been given in fee directly to those devisees, as an absolute estate in fee and in possession, with the same provisions restricting the power of sale."

The Mandlebaum case, it seems to us, lends no countenance to the contention of plaintiff, because the will there is essentially different from the will here. The same may be said of the wills in judgment in the Sikemeier case (124 Mo. 367), and the McQueen case (131 Mo. 9).

I am inclined to the individual opinion that one part of the beneficiaries under a will such as this, have no right to elect to reconvert an estate, equitably converted into money, back into real estate, and have their election enforced in equity, but the point is not necessary to the case and, therefore, is reserved.

Neither is it necessary to decide whether the defendant Jones, by virtue of his discharge as executor in the probate court, has lost the power of making the sale, for, if he has not lost that power, then he can make it when the time arrives. If he has lost it, then it may be that a court of equity, rather than see a trust fail for want of a trustee, will appoint one to execute the power. Or it may be that, under section 137, Revised Statutes 1899, reading, that: "The sale and conveyance of real estate under a will shall be made by the acting executor or administrator with the will annexed, if no other person be appointed by the will for the purpose, or if such person fail or refuse to perform the trust," an administrator, *de bonis non, cum testamento annexo,* might be appointed to execute the power. [See authorities cited in counsel's briefs.] Those are interesting questions which naturally will arise when the right time comes, but a consideration of them at this time would not only be in the nature of *obiter* but would throw no light on the turning point in the case, which is the construction of the will and the testator's intention.

V. We do not think the facts justify an injunction restraining plaintiff and those holding under him from prosecuting further suits. The interpretation of the will was not without difficulty. Counsel, however learned, are allowed some latitude in hypotheses and theories in that behalf. The plaintiff and his predecessor were entitled to go into court on one hypothesis or another, so long as they acted in good faith, did not move wilfully with the purpose of harassing and annoying defendants and were willing to assume the burden of costs incident to an unsuccessful venture. It is not likely another suit in partition will be instituted during the widow's life.

The decree is reversed and the bill is ordered dismissed. All concur, except *Woodson J.,* not sitting.