## JOHN B. THOMPSON, Appellant, v. HUGH Mc-CLERNON et al., Respondents.

**Springfield Court of Appeals, April 4, 1910.**

1. **GUARDIAN AND WARD: Partition: Power of Guardian.** In a partition proceeding, guardians derive their powers from the Partition Act (R. S. 1899, Sec. 4380) which gives them enlarged powers with reference to binding the ward in a division of the land, the acts of the guardian being as binding on the ward as if done by such ward after the removal of his disabilities.

2. ————: ————: **Regular Guardian: Guardian ad litem.** Where the minor defendants have been served with process in a partition suit, it becomes the duty of the court to appoint a guardian *ad litem* for the minors, unless they have a regular guardian, in which case the latter should file the answer for his wards.

3. ————: ————: **Failure to File Answer: Participation of Regular Guardian in Proceedings.** In a partition suit, the regular guardian filed no answer for his wards but an answer was filed by a guardian *ad litem*. The regular guardian, however, participated in the partition proceedings by appearing in court and looking after the interests of his ward. He was appointed commissioner to sell the land, had it platted, sold it for a good price and his sale was approved by the court, and the money was used for the benefit of the wards. *Held*, that his acts were as binding on the wards as if the same things had been done by themselves after arriving at full age.

4. **PARTITION: Misdescription in Advertisement: Sale at Wrong Term: Minor Bound by Sale When.** When the regular guardian participates in the partition proceedings relating to the land of his minor wards, sells the land as commissioner for a good price, and the sale is approved by the court, the proceeds from the sale are used for the benefit of the wards and the balance paid to them when they become of age, the sale of the land is binding upon the wards notwithstanding there was a defect in the description in the advertised notice of sale, and that the sale was made at a term of court subsequent to the term at which it had been ordered sold.

5. ————: **Guardian and Ward: Irregularities: Participation in Proceedings when Binding on Party.** If an adult, sued in partition, participates in a proceeding resulting in the sale of the

land, although without filing any answer, and is at the sale and makes no objection on account of the irregularities in the partition suit, and accepts the proceeds of the sale, the purchaser acquires a good title free from attack by such adult on account of any irregularities. Under the Partition Act, the same rule would bind a minor appearing by guardian.

6. **WILLS: Construction: Clause Limiting Partition of Land.** Where a will provides that the land devised shall be kept intact until the oldest devisee becomes of age, and a partition suit was commenced by the oldest devisee before she became of age but after she reached her majority she filed an amended petition and continued to prosecute the suit; *held*, that the conditions of the will were not violated.

7. ———: ———: **Clause Requiring Land to be Divided in Kind: Partition.** Where a will provides that the land devised shall be kept intact until the oldest devisee becomes of age, at which time it shall be divided share and share alike between the devisees; *held*, that as there was no restriction under the terms of the will against the right of the devisees to alienate the land, there was nothing to prohibit the property from being sold and the proceeds divided in a partition proceeding.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

AFFIRMED.

*Hamlin & Seawell* for appellant.

(1) Partition cannot be made in contravention of a will. Ex-Parte Cubbage v. Franklin, 62 Mo. 364; Stevens v. Larwell, 110 Mo. App. 151; Stewart v. Jones, 118 S. W. 1. (2) The description of the real estate to be sold in the notice of sale published in the newspaper must conform to the petition and judgment. Heirs of Burnham v. Hiatt, 143 Mo. 414; Stoffel v. Reiners, 3 Mo. App. 33. (3) The property must be sold at the term the judgment is rendered, unless an order is made extending time of sale. Hughes v. Hughes, 72 Mo. 136; Secs. 4407, 4408, R. S. 1899; Walser v. Gilchrist, 119 S. W. 413; Carson v. Hughes, 90 Mo. 173. (4) Where there is a duly appointed guardian or cura-

tor at the time of the institution of a suit against an infant defendant, the said guardian or curator should defend. Robinson v. Hood, 67 Mo. 669; Clark v. Crosswhite & Fountain, 28 Mo. App. 38; Judson v. Walker, 155 Mo. 179. (5) Josiah Danforth, by accepting money from his curator at the time of his majority, was not estopped from claiming title to the land. Being a child and ignorant of what was going on in regard to the partition proceedings, he was incapable by reason of his infancy of estopping himself in any way. Harrison v. Reynolds, 183 Mo. 533; Action v. Dooley, 74 Mo. 69; Blodgett v. Berry, 97 Mo. 273; Rosecranz v. D. G. Co., 175 Mo. 250.

*Frank S. Heffernan* for respondents.

(1) Under the statutes, a guardian *ad litem* of an infant in a partition proceeding seems to be clothed with the full powers of his ward after removal of disabilities. LeBourgeoise v. McNamara, 82 Mo. 189; Payne v. Masek, 114 Mo. 637; R. S. 1899, sec. 4380. (2) A special commissioner appointed by the court to sell partitioned lands and report the sale to the court occupies the same authority as an executor of a will, or an administrator *de bonis non*. The power to sell follows the office (unlike a sheriff). Francisco v. Wingate, 161 Mo. 557; Evans v. Blackiston, 66 Mo. 437; Dix v. Morris, 66 Mo. 514; Henry v. McKerlie, 78 Mo. 433; State to use v. Towl, 48 Mo. 148. (3) As the objection to the sale being made at a subsequent term from the order to sell was not made by appellant in the trial court, and no mention made in his motion for new trial, the objection being made for the first time in the appellate court, it will not now be entertained by this court. R. S. 1899, sec. 864; St. Louis v. Sieferer, 111 Mo. 663; Haniford v. Kansas City, 103 Mo. 172; Claflin v. Sylvester, 99 Mo. 283; Newton v. Miller, 49 Mo. 283; Greene v. Walker, 99 Mo. 72; Graham v. Railroad, 113 Mo.

408. (4)  Josiah G. Danforth, receiving the money arising from the sale of the land after he was twenty-one years old, and all disabilities being removed, and he being competent to contract, is forever estopped from claiming any interest in the lands in question. Meddis v. Kenney, 176 Mo. 205.

GRAY, J.—On the 14th day of March, 1892, the respondents by their warranty deed properly executed, sold to appellant a tract of land in Greene county, Missouri.  That deed contained the usual covenants found in general warranty deeds in use in Missouri.  In 1909, the appellant obtained a quitclaim deed to the land from one Joseph G. Danforth, who claimed to have an interest therein paramount to the title conveyed by the respondents.  This deed was obtained for the reason that appellant had a purchaser for the land and who claimed that appellant's title was not good on account of an outstanding interest in said Joseph G. Danforth. The appellant paid Danforth for his deed, the sum of $300.

This suit was brought in the circuit court of Greene county to recover from respondents money paid for this deed, on the theory that respondents were liable by reason of their warranty deed aforesaid.  There was a trial by the court and judgment rendered in favor of the defendants, and plaintiff has appealed.

The court, at the request of the defendants, made a special finding of facts, and which we believe to be supported by the evidence.  It will not be necessary to set forth this finding of facts in full, but the substance thereof is as follows:  That Priscilla A. Danforth at one time was the owner of the property in controversy; that by her will made prior to the year 1889, she devised to the defendants, children of Josiah G. and Priscilla A. Danforth, the land in controversy.  The devisor, Priscilla A. Danforth, was the grandaunt of the devisees.  The will provided that the land should remain

intact and be used for the benefit, education and support until the oldest child (Ada R. Danforth) should become of age. Prior to the time when said Ada R. Danforth became of age, she commenced a suit for partition of the property. Nothing was done with this suit until 1890, when the plaintiff therein had become of age. The minor defendants, having been duly served with process, were represented by a guardian *ad litem,* Hon. John P. McCammon. At that time one A. B. Appleby was the regular guardian of the minor defendants, but he filed no answer, although he was the principal actor in all the partition proceedings. He consulted with the mother of the minors and with the attorneys, the guardian *ad litem,* and appeared in court in person, and was appointed commissioner to sell the property and to lay it off into lots, and it was through his supervision, judgment and business ability that the property was finally sold to the different purchasers for about $15,000. This money he took as guardian and kept it and used it for the benefit, education and maintenance of the minors under various orders made from time to time by the probate court of Greene county, until about 1899, when he surrendered his guardianship and turned over the funds to his successor, Dr. J. R. Bartlett.

As the minor devisees became of age, the proper proportion of the money was turned to them until the last (Josiah), who had made the deed to the plaintiff in this case, became of age, when a settlement was made and he received $797. Of the amount turned over to him, all but about $135 was money from the partition proceedings. In the partition proceedings there was a misdescription of some of the property, especially in the notice of sale, and that while the property was not properly described, legally and technically, yet the property was marked off and measured into lots and parcels, and the purchasers as well as the commissioner, guardian

of the minors, knew the parcels they were buying, and there was no mistake or misunderstanding between them.

The court further found there was no fraud in the sale of the property, and that it brought a fair price; that McClernon, one of the respondents, became the purchaser at the commissioner's sale, of the piece of property in controversy, and afterwards sold and conveyed with covenants of warranty, to the plaintiff Thompson; that Thompson, after holding the property some years, desired to sell it, and had a purchaser in view. The purchaser was willing to buy at the price, but on an examination of the abstract the defects in the partition suit became apparent, and that an adverse opinion by the attorneys on behalf of the purchaser caused him to refuse to take the property; whereupon Thompson sought out and found said Josiah Danforth and procured from him a quitclaim deed for $300, and the price so paid was reasonable, provided the said Josiah had one-sixth interest in the property, which was indicated by the lapse in the record.

The court also found that said Josiah received his money in the hands of his guardian after becoming of age, and that at said time he did not know of any defects in the sale of the land, or that he had any interest therein, but that he knew that this property had been at one time the property of himself, as well as the other devisees, and that he knew that the funds in the hands of his guardian were the proceeds arising from the sale of this property to these defendants and other purchasers, and that he knew that it was practically the only estate they ever had, and it was a matter of common knowledge to the family that this money came from that source.

The court also found that in the petition suit the court made an order to sell the property at a term of the court, and there was no order showing a continua-

tion of that order to sell at any other time, but the property was sold at a subsequent term.

There are but two assignments of errors. The first is, that the court erred in holding that Josiah G. Danforth had no interest in the real estate, and second, because under the evidence and the law, the judgment should have been for the appellant.

Appellant attacks the partition sale on the following grounds: (1) Because the land was partitioned in contravention of the will; (2) because the notice of sale in the newspaper misdescribed the land; (3) because the land was sold at a term subsequent to the rendition of the judgment and the one at which it was ordered to be sold, and no renewal order of sale was made by the court or clerk in vacation; and (4) because the infant defendants should have defended by their regularly appointed guardian and curator.

At the time of the partition proceedings, section 4380 of the Revised Statutes of 1899, was in force, and that section reads as follows: "The guardians and curators of the estates of minors and persons of unsound mind, appointed according to law, are hereby authorized, in behalf of their respective wards, to do and perform any matter or thing respecting the division of any lands, tenements or hereditaments, as herein directed, which shall be binding on such ward, and deemed as valid to every purpose as if the same had been done by such ward after his disabilities are removed."

In the court's finding of facts, and which we have said is supported by the evidence, is the following: "In all of these proceedings and in the investigation thereof and throughout the entire proceedings, A. B. Appleby, the guardian of the minor defendants and of the plaintiff prior to her attaining her majority, was the principal actor. He had consulted with their mother and with the attorneys, the next friend, and appeared in court in person and was appointed commissioner to sell the property and lay into lots and sell it, and it

was through his supervision and his judgment and business ability, etc., that the property was finally sold to the different purchasers at the sales."

Judge GANTT, in construing this statute in Payne v. Masek, 114 Mo. l. c. 636, 21 S. W. 751, said: "It must be conceded in the outset that the Legislature could not easily have found language which would be plainer and more comprehensive in conferring power upon the guardian or curator to act for his ward than is to be found in this section." In this opinion the court also affirms the previous decision of LeBourgeoise v. McNamara, 82 Mo. 189, wherein it was held that in partition proceedings guardians derive their powers from the partition act, and that the general law to the effect that a guardian has no power to admit material facts in the conduct of a trial so as to bind his ward, does not govern in partition proceedings.

In the case in 82 Mo., the gurdian *ad litem* of certain minors entered into a stipulation dispensing with proofs. The power to do this was subsequently challenged and the court unanimously concurred in sustaining the guardian's power, and cited the section in controversy as clothing the guardian with such power as the ward himself would have, if his disabilities were removed.

In the Payne case, the conclusion of the court is as follows: "Our conclusion then is that the partition act is ample authority for a general guardian or curator to enter the appearance of his ward either as plaintiff or defendant in a partition suit and to do and perform any matter or thing respecting the division of any lands, tenements or hereditaments that the ward himself could do if his disabilities were removed and the judgment of the court will be binding on the ward."

Process was served upon the minors in this case, and, therefore, the court obtained jurisdiction of their persons and had jurisdiction of the subject-matter of the suit. It became the duty of the court to appoint a

guardian *ad litem* for the minors, unless they had a regular guardian, which the evidence shows they did have, and he, instead of the guardian *ad litem*, should have filed an answer, but the facts show that he was in court in person, representing the wards and was looking after their interests, and the proceedings that did take place were not only with his consent, but exactly as he desired. The court, having obtained jurisdiction of the person and the subject-matter, defendants' rights and powers must be governed by the partition act, and not by the general practice act. [Cochran v. Thomas, 131 Mo. l. c. 275, 36 S. W. 6.]

Proceedings in partition sales is a sale by the act of the parties themselves, as well as by judgment, and is not a sale *in invitum* like an ordinary sheriff's sale under execution. [Pockman v. Meatt, 49 Mo. 349; Cochran v. Thomas, 131 Mo. l. c. 277, 36 S. W. 6.]

If we give to the statute in question the construction placed upon it by the Supreme Court (and it is our duty so to do), then whatever the guardian of the minors did in that partition suit towards laying off the land and making a sale thereof, was the same as if the same had been done by said minors after the disabilities were removed.

Our conclusion is that under the provisions of the statute herein set forth, the appearance of the guardian in the partition suit, and his participation therein in the manner set forth in the special finding of facts, were within his authority as guardian and were just as binding upon his wards as if they had taken the same steps after their disabilities had been removed. The appointment of the guardian *ad litem* and his answer did not place the minor defendants in a worse position than they would have been in had no answer at all been filed. The answer filed by the guardian *ad litem* prayed the court to require strict proof of the allegations set out in the plaintiff's petition in partition, for the reason that the said guardian *ad litem* did not have suffi-

cient knowledge concerning the same. Under the agreed statement of facts, if the answer had been filed by the regular guardian, the allegations of the plaintiff's petition would have been admitted, and therefore, the defendants in that partition suit were in no wise injured by the failure of their guardian to file an answer.

We are of the opinion that if the court had not appointed a guardian *ad litem,* and if the legal guardian had filed no answer, yet as he appeared and looked after the interests of his wards in that suit and had the property platted and sold it at its full value, and reported to the court what he had done, and had his proceedings approved and made a deed to the purchasers, received the purchase money, kept it and used it for the benefit of his wards, all of which is conceded here, such actions by him were as binding upon the minor defendants as if the same things had been done by themselves after arriving at full age, in a partition suit wherein they were defendants acting for themselves. It requires the citation of no authorities to sustain the proposition that if an adult sued in partition participates in the proceedings resulting in a sale of the land, although without filing any answer, and is at the sale and makes no objections on account of the irregularities in the partition suit, and accepts the proceeds of the sale, the purchaser acquires a good title free from attack by such adult on account of any irregularities.

What we have just said, of course, is limited to cases wherein there is no collusion, and wherein the guardian acts in good faith toward his wards.

The contention that the land was partitioned in contravention of the will, is two-fold. First, that the will provides that the land shall be kept intact until the oldest child becomes of age; and second, that at said time it shall be divided share and share alike, between certain named children. The first point may be disposed of with the statement that while the partition suit was commenced by the oldest child, by her

next friend, before she became of age, yet after she became of age, she filed an amended petition and continued to prosecute the suit, and no order of partition was made until sometime after she was of full age.

The second point is that the land could not be sold in partition, but the will requires partition thereof in kind. Appellant cites in support of the proposition, the case of Stewart v. Jones, 219 Mo. 614, 118 S. W. 1. We do not consider that case controlling. In that case the testator had been twice married and left a daughter by his first wife, and by his will left his homestead, consisting of fifty-two acres in the outskirts of a city, to his wife for life in lieu of dower, and directed that at the death of his widow, his executor should sell the homestead at public venue and divide the proceeds equally *per capita* between his daughter and the five children of a sister, and in the event that said daughter should die prior to the distribution of the proceeds of the sale, then her share should descend to her bodily heirs, and if she should die without bodily heirs, then her shares should descend and be equally divided with the children of another sister. The court held that partition of this property in kind could not be made, because there was an express provision for a sale of the property and the proceeds divided.

In adition to the above, an effort was made to partition the property before the time fixed, when the same could be done under the terms of the will, and the court said: "Who shall say he did not anticipate the growth of that town and the rise in the value of suburban property, just as has happened? With that in view he makes it contrary to his will to partition his homestead among those participating in his bounty until the happening of a certain event, to-wit, Eliza's death." There is no such language in the will of Mrs. Danforth. She simply provides that her property shall be kept intact until the oldest child becomes of age, when it may be divided share and share alike. From this language it cannot

be said that she intended to prohibit the property from being sold and the proceeds divided through the proper court, if by so doing a greater value could be obtained than by partition in kind.

This case is more like McQueen v. Lilly, 131 Mo. 9, 31 S. W. 1043, wherein the court holds that in case no restriction be found in the will on the right of the devisees to alienate the land, the statute providing no partition or sale of land should be made contrary to the intention of the testator, does not apply. What we have said disposes of the case. The judgment of the trial court will be affirmed. All concur.